Johnson *et al. v.* Putnam.

Filed April 19, 1884.

---

## No. 7921.

### JOHNSON ET AL. *v.* PUTNAM.

PLEADING.—*Harmless Error.*—There is no available error in sustaining a demurrer to a paragraph of answer, all the material averments of which may be proved under another paragraph upon which issue is joined.

ASSAULT AND BATTERY.—*Pleading.*—*Trespass.*—A complaint for trespass to the person, which averred that the plaintiff was lawfully in possession of a building, and that the defendants with great force assaulted her and put her out of the house, injuring her person, counts only for the assault and battery, and not for breaking the plaintiff's close, and an answer, which shows only that the defendants were in possession rightly, is bad on demurrer.

SPECIAL VERDICT.—*Venire de Novo.*—*Practice.*—A special verdict is not defective for failure to find as to immaterial matters put in issue, but if it find all material issues, a *venire de novo* should not be awarded.

SAME.—If a special verdict fail to find on any material issue, it has the effect of a finding against the party who had the burden of that issue.

SAME.—*Presumption.*—It is the office of a special verdict to find only the facts established by the evidence, and therefore, if there be no finding upon an issue, the presumption is that there was no evidence upon it, and a *venire de novo* should not be awarded.

From the Superior Court of Marion County.

*J. C. Denny, D. V. Burns, H. Burns* and *C. S. Denny,* for appellants.

*A. C. Ayres, E. A. Brown, J. W. Gordon, R. N. Lamb* and *S. M. Shepard,* for appellee.

FRANKLIN, C.—This was an action of trespass, brought by the appellee against the appellants, for an assault and battery. The complaint is in two paragraphs. The first is the common law count of trespass for the assault and battery. The second sets out that the plaintiff, on the 26th day of June, 1877, entered into a written contract with George W. Julian and John O. Hopkins, a majority of the board of school trustees of the town of Irvington, to teach the public school of said town of Irvington for a term of nine months, beginning on the 3d day of September, 1877. A copy of the contract is set out as a part of this paragraph. That Sylvester Johnson, the third trustee, was notified of the meeting at which plaintiff was employed, but refused to attend the same; that said Julian and Hopkins delivered to her the keys of the school building at the time they employed her; that in pursuance of her said contract the plaintiff was about to enter upon the discharge of her duties as teacher of said public school on the 3d day of September, 1877, in said public school building, and was in the peaceable possession of the same under her said contract, when the said defendants, by force and arms, assaulted her, and then and there, with great force and violence, seized and laid hold of her, and dragged her from said schoolroom in said house, and pushed her through the halls and down the stairs of said building, and pushed her with great force from said house; and also, then and there, shook and pulled about the said plaintiff, and then and there bruised her by pushing her against the walls of the said building, and then and there, by violently unloosing her hand from a staple in said wall, tore the skin from the index finger thereof, to her damage, etc.

To which complaint the appellants jointly answered, first, a denial; second, that they, as the school trustees of the town of Irvington, had the possession of the school-house thereof, and that the plaintiff, wrongfully and by force and arms, broke into and took possession of the said public school-house; that they notified plaintiff that she was wrongfully in possession

of said school-house, and requested her to vacate the same, and deliver the possession thereof to them as such trustees; that she refused to do so, and thereupon they took hold of her, and ejected her from said school-house, using no more force than was necessary for that purpose; that this was the grievance complained of, and none other; and concluded with a denial of all the allegations of the complaint not herein specifically admitted.

The third paragraph of the answer is to the second paragraph of the complaint, and is similar in some respects to the second, but contains the further allegations that, at the time the plaintiff wrongfully and forcibly took possession of the school-house, she claimed the right to the possession thereof, under and by virtue of the contract set out and referred to in her said second paragraph of complaint; that said contract gave her no right to the possession of the said school-house for the reasons following:

1st. That George W. Julian was not a legal school trustee of said town, and had no right to enter into said contract, of which plaintiff had notice.

2d. That these defendants, composing the board of school trustees of said town, had, before the happening of the pretended grievances complained of, to wit, on the 14th day of August, 1877, revoked and annulled said contract, due notice of which was at the time given to the plaintiff.

3d. The contract in nowise related to the possession of the school-house, but only to the services of the plaintiff as teacher.

4th. That at the time the contract was executed, the plaintiff was not licensed to teach in the public schools.

That on the morning and before the happening of the grievances complained of, they notified the plaintiff that the contract had been revoked. This paragraph then concludes as in the second.

The defendants Johnson and Shank jointly answered in three paragraphs, similar to the three paragraphs in the joint

answer of all the defendants, to which answers the plaintiff severally and separately demurred to the second and third paragraphs of each.

The demurrers were sustained to the third paragraph of each, and overruled as to the second paragraph of each; exceptions were taken. Replies in denial to second paragraph.

Trial by jury, and a special verdict returned as follows:

"We, the jury, having been required to find a special verdict in the said cause, do find the facts to be as follows: 1st. That the town of Irvington, in the county of Marion and State of Indiana, is an incorporated town, under and by virtue of the laws of the State of Indiana; that on the 3d day of June, 1875, George W. Julian was, by the board of trustees of the said town of Irvington, appointed one of the trustees of the schools in and for said town for the period of three years; that said Julian, within a few days after that time (records do not show the date, except in the month of June), took the oath of office as such trustee, and entered upon the discharge of the duties of his office; that at the time one Oliver M. Wilson and S. M. Houston were his cotrustees of schools for the said town; that the said Julian, Wilson and Houston organized said school board, and elected officers for the same as follows, to wit: George W. Julian, president, O. M. Wilson, secretary, and S. M. Houston, treasurer; that said persons were and acted as such trustees of schools for said town until the 9th day of June, 1876, when the term of S. M. Houston expired, and Professor John O. Hopkins was appointed by the said civil board of trustees of said town of Irvington for the term of three years from said last mentioned date; that immediately thereafter the said Hopkins accepted said appointment, and took the oath of office as such trustee, and entered upon the discharge of the duties of his office as such trustee; that on the 13th day of June, 1876, the said trustees, Julian, Wilson and Hopkins, organized themselves as such board of trustees of schools for said town of Irvington, by electing said Julian president, Wilson

as secretary, and said Hopkins as treasurer thereof; that as such treasurer the said Hopkins filed with the auditor of the county of Marion and State of Indiana, with two good freehold securities in the sum of three thousand dollars ($3,000), his official bond as such treasurer; that the same was approved by the said auditor; that said Julian, Wilson and Hopkins continued to act and be recognized as such school trustees during the remainder of the year 1876, and up to the 1st Monday of June, 1877, when the term of office of said Wilson expired; that during the school year of 1876 the said trustees, last above named, had employed the plaintiff in this action as a teacher in the public school of said town; that the term of that school expired in June, 1877; that on the 4th day of June, 1877, the civil board of trustees of said town of Irvington appointed the defendant Sylvester Johnson one of the school trustees of the said town of Irvington, in the place of O. M. Wilson, whose term then expired; that on the 16th day of June, 1877, the civil board of trustees of said town of Irvington passed a resolution as follows, viz.:

"'June 16th, 1877, the board met at the office of J. H. Tilford, and the following action was had: The following resolution was presented and adopted: Whereas Sylvester Johnson and George W. Julian have failed to give bond and properly qualify under the law, as school trustees of the town of Irvington; and whereas the offices for which they were appointed are thereby vacant: Therefore,

"'Be it Resolved, That this board do now go into the election to fill said vacancies. Thereupon, there was an election, resulting in the election of Sylvester Johnson for the long term, and Dr. James A. Krumrine for the short term, as such school trustees of the town of Irvington. And the board adjourned to meet upon the call of the President.

Attest:                          "' LEVI RITTER, President.

"' C. D. MITCHELL, Clerk.'

"That no other or different order was ever made by said

civil board of trustees of said town in reference to the vaca-
tion of the office of the said Julian; that said Julian did not
at any time resign or abandon his said office; and that said
town trustees never informed said Julian of said order offi-
cially, or in any other way, nor was he informed directly or
indirectly, before or at the time of the passage of said reso-
lution; nor did said Julian in any manner consent to the
same, but on the contrary insisted that he was, and would
remain, such legal trustee, until the first Monday of June,
1878; that said Krumrine, mentioned in said resolution, took
the oath of office and assumed to act as a trustee of the school
board from and after the said 16th day of June, 1877; that
said Hopkins refused to be recognized as a member of said
school board last elected as aforesaid; but, on the contrary,
said Hopkins recognized and acted with said Julian as his
co-trustee, so long as he, the said Hopkins, remained a mem-
ber of the said school board.

" That on the 18th day of June, 1877, said Johnson and
Krumrine tendered their joint bond to the auditor of Marion
county; the said Krumrine purported to be president, and
said Johnson secretary, of said school board; that on the 20th
day of June, 1877, the said Julian tendered to the said audi-
tor of Marion county his bond as president of said school
board in the penal sum of one thousand dollars ($1,000), in
due form of law, with F. M. Finch and E. A. Brown, two
good and sufficient freeholders of said county, as his sureties;
that the said bond was refused by said auditor on the
ground that he had the bond of another person already on
file in his office, for the said office, and the refusal was placed
upon no other ground; that on the 23d day of June, 1877,
said Hopkins again filed with the said auditor his bond as
treasurer of said school board, in the sum of three thousand
dollars ($3,000), conditioned according to law, with two good
and sufficient freehold securities; that said auditor accepted
the said bond of said Hopkins, and placed the same on file
in his office; that on the 26th day of June, 1877, the said

Hopkins, as such school trustee, notified said Johnson that the said board of school trustees of said school corporation of the town of Irvington would meet that evening at the house of said Hopkins in said town, and requested the said Johnson to attend the same as one of the school trustees; that the said Julian and Hopkins, in accordance with a call by said Hopkins and Julian, as such trustees, did meet at the house of said Hopkins, as such trustees, and did then and there ratify and reduce to writing a contract of employment with the said plaintiff, to teach the public schools in the said town of Irvington, for the school year of 1877 and 1878; that, as such school trustees, they then signed the said contract; that no record of said meeting was kept by said Hopkins and Julian, while acting as such school trustees, on the evening of said 26th day of June, 1877; that said contract is in writing, and is as follows, to wit:

" ' This agreement, made and entered into this day between the undersigned trustees of the Irvington public school of the first part, and Lydia R. Putnam of the second part, witnesseth, That whereas the said trustees some weeks ago verbally agreed with the said Lydia R. Putnam that they should retain and employ her to teach the said school for the ensuing school year; and whereas it is deemed expedient now to reduce the said verbal contract to writing, and set forth the terms and conditions of the employment of the said Lydia R. Putnam to teach said school: Therefore, and to this end, it is hereby stipulated by the said parties that said Lydia R. Putnam shall teach said school for the period of nine (9) months, exclusive of vacations; said school to begin on the first Monday of September, 1877; and that said trustees shall pay her for her said services at the rate of sixty dollars ($60) per month. In witness whereof the said parties have hereunto set their hands and seals the 26th day of June, 1877.

" ' Geo. W. Julian.     [seal.]

" ' J. O. Hopkins.     [seal.]

" ' Lydia R. Putnam. [seal.] '

"That the said plaintiff also, on said night, signed said contract; that the keys of the house, used for that purpose, as the public school-house, were committed to the plaintiff by the said Hopkins and Julian, who were then and there acting as said school trustees; that on the 11th day of July, 1877, said Hopkins resigned his office as such school trustee, and that the defendant William H. H. Shank, on the 2d day of August, 1877, was appointed school trustee in the place of John O. Hopkins, by the board of civil trustees of the said town of Irvington; that he duly qualified and filed his bond on the 9th day of August, 1877; that on the 26th day of August the plaintiff was duly licensed as a teacher by the county superintendent of schools in and for said county of Marion aforesaid; that on the first Monday of September, 1877, the plaintiff herein went to the public school-room in the said town of Irvington, and peaceably and quietly entered the same through the outer door, and was, between the hours of eight (8) and nine (9) o'clock A. M. of said day in the quiet and peaceable possession of a school-room in said house, by virtue of her said contract; that while in such peaceable possession with color of right, the said defendants forcibly, in a rude, angry and insolent manner, took hold of the plaintiff and dragged her from said school-room, out through the cloak-room and hall of said school-house, and out of doors; and that in so doing they bruised and lamed her, so that she became and was by reason thereof sick and sore for the space of six days, the said defendants well knowing at the time that the plaintiff was in poor health; that such seizing, dragging and pushing was attended with excitement and violence, and frightened the scholars and other persons who were at and in said room; that it was done in such a violent manner as to cause a breach of the peace.

"If, upon these facts, the law is with the plaintiff herein, then we find for the said plaintiff, and assess her damages at eight hundred dollars ($800); and if the law is for the defendants, then we find for the defendants.

"JAMES B. MANN, Foreman."

The plaintiff moved for judgment in her favor on the special verdict of the jury. The defendants moved for a *venire de novo*. The motion for a *venire de novo* was overruled, and the defendants filed a motion for a new trial, which was also overruled, to which rulings the defendants at the time excepted, and the court rendered judgment on the special verdict for the plaintiff for $800. The defendants appealed to the general term of the superior court, which court affirmed the judgment of the superior court in special term. The error assigned in this court is, the superior court in general term erred in affirming the judgment of the superior court in special term. The errors assigned in the superior court in general term are:

1st. Overruling defendants' motion for a *venire de novo*.

2d. Overruling defendants' motion for a new trial.

3d. Sustaining plaintiff's demurrer to the third paragraph of defendants' joint answer.

4th. Sustaining the demurrer to the third paragraph of defendants' separate answers.

The third and fourth assignments of error naturally arise first, and as they both embrace the same, the sufficiency of the third paragraphs of the joint and separate answers, both being the same in principle, they may be considered together.

Counsel for appellants insist that these paragraphs of the answers ought to be held good as to the second paragraph of the complaint, for the reason that said paragraph of the complaint is the same as a common law count for trespass *quare clausum fregit,* and these answers go to the question of the right to the possession of the house, that defendants had that right, and plaintiff did not; that the most that could be said of plaintiff's right was that she only had a license, and that was subject to revocation by defendants at pleasure.

We do not think appellants' counsel place a proper construction upon the second paragraph of the complaint; in that paragraph, plaintiff does not call upon the defendants to

show cause why they broke and entered her close; they are not charged with breaking and entering her premises; she makes no complaint of their entering the house. The language of her complaint is, that while she was peaceably in the possession of the house, under the said contract, the defendants, by force and arms, assaulted her, and then and there, with great force and violence, seized and laid hold of her, and dragged, etc. This paragraph is simply for an assault and battery.

We have omitted discussing the arguments and citing the authorities of appellants' counsel upon the questions of the right to possession, and the power to revoke a license for possession, for the reason that we do not think this is an action for trespass *quare clausum fregit*, and they are not applicable to this case.

We think these paragraphs of the answers are insufficient to constitute defences to the second paragraph of the complaint. If they were sufficient, all the material allegations which they contain, that would be admissible in evidence upon a trial of the cause, if not under the general denial in the answer, would be admissible under the second special paragraph of the answer, and the sustaining of the demurrer would not be an available error, for no harm would be done appellants thereby.

The first assignment of error is upon the overruling of the motion for a *venire de novo*.

Under this, the objections to the special verdict are:

1st. It does not find whether the house from which plaintiff was ejected was the public school building.

2d. It does not find whether the house was under the control of defendants as school trustees at the time plaintiff entered it.

3d. It does not find whether the defendants at the time were acting in their official capacity as school trustees, and whether they first notified her to vacate and deliver possession to them, and whether they used more force than was necessary to eject her from the school-house.

Under these objections we have been referred to the following authorities: *Jenkins* v. *Parkhill*, 25 Ind. 473; *Gulick* v. *Connely*, 42 Ind. 134; *Whitworth* v. *Ballard*, 56 Ind. 279.

We have examined these cases, and find the rule to be, that if the jury in their special verdict fail to find upon all the issues, a motion for a *venire de novo* will be sustained. The issues in this case were, did the defendants commit an assault and battery upon the plaintiff? Were they justifiable or excusable in what they did? Were they guilty or not guilty? See the case of *Gazette Printing Co.* v. *Morss*, 60 Ind. 153.

We do not understand these decisions to go to the extent that each allegation in the complaint and answer is to form a separate and distinct issue in the case; some of them may be immaterial, and constitute but very little, if any part, of the real issues in the case.

This court, in the case of *Graham* v. *State, ex rel.*, 66 Ind. 386, used the following language: " There is no difference between a special verdict and a special finding by the court, except that the special verdict finds the facts only, and the court afterward pronounces, or rather applies the law to the facts found, and renders judgment accordingly; while, in a special finding, the court states the conclusions of law upon the facts found, so that the parties can except to the conclusions. Neither a special verdict nor a special finding can do more in relation to facts than to find or state them. But what facts are to be thus found or stated? Clearly those that are proved upon the trial, and none other. When the special verdict has found the facts proved on the trial, it has performed its entire office; and when the special finding has stated the facts proved on the trial, it has performed its entire office, so far as the facts are concerned. Of course the facts may be proved by circumstance or otherwise, as in any other mode of trial. But suppose there are issues in the cause concerning which no evidence is given. There is nothing in such case in relation to those issues for the court or jury, in finding specially, to pass upon. No fact in rela-

tion to them has been proved, and, hence, no fact in relation to them is to be found or stated, because, as we have seen, the special verdict or finding is confined to the facts proved. In the case supposed, it would seem that, in rendering judgment, the issues concerning which no facts are found should be regarded as not proved by the party on whom the burden of the issue or issues lies."

If the issue failed to be found upon is to be regarded as not proved, then the facts constituting an issue, not being found, are to be regarded as not having been proved. If the special verdict or finding is silent as to any fact in issue, that fact is to be regarded as not proved by the party upon whom the burden of proof lies. If there was proof of a fact not found, the remedy is by motion for a new trial. *Vannoy* v. *Duprez,* 72 Ind. 26; *Martin* v. *Cauble,* 72 Ind. 67; *Jones* v. *Baird,* 76 Ind. 164.

Under these authorities the objections to the special verdict in this case are not well taken, and there was no error in overruling the motion for a *venire de novo.*

The last assignment of error to be considered is the overruling of the motion for a new trial. The reasons assigned for a new trial are, the verdict was not sustained by the evidence, excessive damages, and the admission of improper evidence. The jury found facts which constituted excessive force, and that it was used in a rude, insolent and angry manner. The evidence clearly tended to support the finding. This court will not reverse a judgment upon the weight of the testimony, when the evidence tends to support the verdict. As to excessive damages, while the amount may appear to be somewhat extravagant, yet we see nothing in the evidence that would justify this court in interfering with the verdict for that reason. This is a question purely for the sound discretion of the jury, and, unless there has been a clear abuse of the exercise of that discretion, it must rest as fixed by the jury.

The following testimony given by the plaintiff is objected to:

" I went around and went in the back door, and was going up-stairs. It was a short flight of steps. I was about half way up those stairs, and the children came out of the school-room, and the little ones got on the stairs and delayed me. I could not get up on account of the children. They were in my way. While I was on the stairs, before I got quite to the top, I think Mr. Johnson came out and caught me again. He could not drag me down the stairs, for the children were there in the way. I got my hand in a staple; there is some dispute about it, but I think it is on the inside of the outer door. I grasped that staple. Mr. Johnson held my left arm. Mr. Shank tried to unloose my grasp, but did not succeed very well. Mr. Johnson told Dr. Krumrine to come and help. Dr. Krumrine came and took hold of my fingers and twisted them that way. Of course I was obliged to unloose my grasp. Of course it hurt me considerable, taking my hand out of the staple by force."

Upon an examination of the bill of exceptions, in the record containing the evidence, it appears that this evidence was introduced without any objection from appellants, and no exceptions were taken to its introduction. The only objection that appears in the record is contained in the motion for a new trial, and this does not properly get the objection and exception into the record. The facts testified to, however, followed immediately after the first trouble, and were a part of the same transaction, and competent evidence.

The following testimony given by William K. Sproule was objected to, and an exception at the time properly reserved:

"Question. You may state whether the bond (referring to Julian's bond) was rejected for insufficiency of the security or informality of the bond.

"Answer. There was no objection to the sufficiency of the security."

We think this testimony was immaterial, but we do not see how it could injure appellants. If an error, it was a harmless

one. We see no available error in this record. The judgment ought to be affirmed.

PER CURIAM.—It is therefore ordered, upon the foregoing opinion, that the judgment below be and the same is hereby in all things affirmed, at appellants' costs.

ELLIOTT, J., did not participate in the decision of this cause.

Filed Feb. 13, 1884. Petition for a rehearing overruled April 19, 1884.